UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RITA EASTON,** <br>      **Plaintiff,** <br><br>      v. <br><br> **JOHN W. SNOW, et al.,** <br><br>      **Defendants.** | Civil Action 04-02038 (HHK) |

**MEMORANDUM OPINION AND ORDER**

Rita Easton, proceeding *pro se*, brings this action against her employer, the Department of Treasury ("DOT"), alleging that DOT discriminated against her on the basis of her race, sex, and religion, subjected her to a hostile work environment, and retaliated against her for expressing opposition to DOT's allegedly discriminatory conduct, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. Before the court is DOT's motion to dismiss or, in the alternative, for summary judgment [#14]. Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that the motion must be granted in part and denied in part.

**I. BACKGROUND**

Easton, a 51-year-old Black female, has been employed by the Internal Revenue Service ("IRS"), an agency within DOT, since September 1987. In 2000, the IRS reviewed certain positions within the IRS, including Easton's position as a Management Analyst, and decided to reorganize and reclassify them from non-bargaining unit positions to bargaining unit positions.

However, for more than two years DOT failed to implement this change. The proper designation of her position is "very important" to Easton because it affects "her rights as an employee, particularly employment retention and bumping rights." Defs.' Mot., Ex. A, at 1.

On September 6, 2002, an attorney wrote a letter to Representative Albert Wynn on Easton's behalf, complaining of the delay in reclassifying Easton's position. The letter requested that Representative Wynn try to get the IRS to "look into this matter and take immediate action to properly classify [Easton] as a Bargaining Unit (BU) employee." *Id.* at 2. In response, on September 20, 2002, Representative Wynn wrote to the commissioner of the IRS. The IRS answered Wynn's letter and acknowledged that Easton's position had been determined to be a bargaining unit position but that conversion had not yet occurred due to pending negotiations with the National Treasury Employees Union. *Id.*, Ex. B. The IRS indicated that they had hoped to have all issues resolved by March 2003. *Id.* However, by late May 2003, Easton's position was still not converted to a bargaining unit position, prompting Representative Wynn to write yet another letter to the IRS. In early June 2003, the IRS responded, stating that further delay occurred "in order to not disadvantage employees for any potential buyouts," but that conversion would be completed within a month. *Id.*, Ex. C. Easton's classification was officially converted on August 23, 2003. *Id.*, Ex. K.

Almost a year later, on July 20, 2004, Easton initiated counseling with the IRS's equal employment opportunity ("EEO") office, alleging retaliation for contacting Congressman Wynn as well as discrimination on the bases of race and age. *Id.*, Exs. D & E. Easton complained that the IRS had discriminatorily subjected her to multiple audits and that someone had tampered with her computer. Soon thereafter, Easton wrote to her EEO counselor, informing her that she

wished to "cancel my EEO case," and "file my case through the District Court." *Id.*, Ex. F. She thereafter sent a letter to the Equal Employment Opportunity Commission ("EEOC"), dated August 11, 2004, notifying them of her "intent to file a civil action."

Almost two months later, Easton initiated another informal EEO counseling session with the IRS, objecting to a disciplinary notice that she had received on September 29, 2004. She again claimed that she was discriminated against on the basis of age and race and retaliated against. Two weeks later, Easton withdrew her EEO complaint and stated that she had "decided to file [her] complaint with EEOC based on age discrimination." *Id.*, Ex. H.

On November 19, 2004, Easton filed her complaint, alleging that defendants "engaged in unlawful discrimination based on race, sex, age, religion and reprisal" in violation of Title VII and the ADEA. Compl. at 1. Specifically, Easton complains of the denial of her bargaining unit classification, *id.* ¶ 21, the issuance of a letter of reprimand, *id.* ¶ 23, and the lowering of her performance appraisal. *Id.* ¶ 24. Her complaint also alleges that she was "subjected to an abusive and hostile work environment" based on race and because she engaged in protected EEO activity. *Id.* ¶ 17. Easton seeks declaratory relief and $500,000 in compensatory, punitive, and liquidated damages.

## II. ANALYSIS

DOT moves to dismiss, or alternatively, for summary judgment, arguing that Easton's Title VII claims are "not properly before the Court because she failed to exhaust her administrative remedies for those claims," that her hostile work environment claims are "legally deficient," and that her ADEA claims fail because Easton cannot establish a *prima facie* case of

3

age discrimination. Defs.' Mot. at 1. The court agrees in many respects and concludes that DOT is entitled to summary judgment on all of Easton's claims except for her claims of retaliation in violation of the ADEA.[1]

**A. Easton's Title VII Claims**

Before filing a Title VII lawsuit, a federal employee must exhaust her administrative remedies. *See, e.g*, *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832–33 (1976). The remedial framework erected by Title VII relies heavily on the administrative component of the process. As such, 42 U.S.C. § 2000e-16(c) requires that a plaintiff file an initial charge of discrimination with the employing agency. *See Loe v. Heckler*, 768 F.2d 409, 417 (D.C. Cir. 1985); *President v. Vance*, 627 F.2d 353, 360 (D.C. Cir. 1980). The administrative phase of the process is not

---

[1] Because the court looks to materials outside the pleadings in resolving DOT's motion, the court will treat the motion as one for summary judgment. *See Zuurbier v. MedStar Health, Inc.*, 306 F. Supp. 2d 1, 5 (D.D.C. 2004). The standards for resolving motions for summary judgment are familiar. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

The court recognizes that Easton has not yet had a "full opportunity to conduct discovery." *Anderson*, 477 U.S. at 257. However, Easton has neither sought to defer a ruling on DOT's motion for summary judgment under Rule 56(f) of the Federal Rules of Civil Procedure nor otherwise "alerted the district court of the need for further discovery," *First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988), thereby preventing the court from delaying resolution of DOT's motion. Moreover, Easton herself introduced matters outside the pleadings in her opposition to DOT's motion, in effect conceding that the court may properly treat the motion as one for summary judgment despite the lack of discovery.

merely a procedural hurdle that the plaintiff must overcome. Rather, "it is part and parcel of the congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for maintaining nondiscrimination in employment." *Kizas v. Webster*, 707 F.2d 524, 544 (D.C. Cir. 1983). Moreover, the exhaustion requirements permit an employer to investigate claims of discrimination promptly, before evidence becomes stale. *See Delaware State Coll. v. Ricks*, 449 U.S. 250, 256–57 (1980).

The relevant regulations require an aggrieved person to "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). If the matter is not resolved through informal counseling, the aggrieved person must, within 15 days, file a written complaint with the agency that allegedly discriminated against her. *Id.* § 1614.106. Thereafter, the agency is obligated to either investigate the matter within 180 days or reject the complaint and issue a final dismissal. *Id.* §§ 1614.108. A complainant may only seek relief in federal court after receiving an adverse final decision from the agency or after a written complaint has been pending for at least 180 days. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.

Here, Easton never filed a written complaint with the agency. Rather, after submitting to informal EEO counseling twice and withdrawing her EEO claims each time, Easton proceeded directly to file her complaint.[2] Easton never disputes that she failed to file a formal complaint of

---

[2] Specifically, Easton filed a "pre-complaint" with the IRS on July 29, 2004 and again on September 30, 2004. Both times, she later contacted her EEO counselor and withdrew her claims. When she withdrew her second EEO claim on October 15, 2004, Easton wrote that she "no longer wish[ed] to go through the IRS EEO process." Defs.' Mot., Ex. H. She thereafter filed her complaint in this court on November 19, 2004.

discrimination with the IRS, nor does she dispute that she did not give the IRS an opportunity to investigate her claims and adjudicate them administratively. Accordingly, all of Easton's Title VII claims must be dismissed for failure to exhaust. *See, e.g.*, *Bryant v. Orkand Corp.*, 407 F. Supp. 2d 29, 35–36 (D.D.C. 2005).

**B. Easton's ADEA Claims**

Easton also alleges that DOT discriminated and retaliated against her and subjected her to a hostile work environment, all in violation of the ADEA.[3] The ADEA requires that the federal government make employment decisions "free from any discrimination based on age." 29 U.S.C. § 633a(a). The D.C. Circuit has explained that, in an ADEA case, "the plaintiff's ultimate burden is to prove that age was a 'determining factor' in the challenged employment decision." *Krodel v. Young*, 748 F.2d 701, 706 (D.C. Cir. 1984) (quoting *Coburn v. Pan Am. World Airways, Inc.*, 711 F.2d 339, 342 (D.C. Cir. 1983)). More specifically, "[t]he plaintiff must prove that 'age made a difference in the employer's decision,' in the sense that, 'but for' the discriminatory motive, the employee would have been hired, promoted or retained." *Id.* (quoting *Cuddy v. Carmen*, 694 F.2d 853, 857–58 & n.23 (D.C. Cir. 1982)). Additionally, the D.C. Circuit has held that, despite the absence of an explicit anti-retaliation provision in the section of the ADEA waiving federal sovereign immunity, 29 U.S.C. § 633a, the ADEA prohibits the

---

[3] The ADEA has less stringent exhaustion requirements than Title VII. Unlike Title VII, plaintiffs alleging age discrimination under the ADEA have the option of either filing an administrative complaint through their agency's EEO office *or* proceeding directly to federal court. Under the latter option, a plaintiff may file a federal complaint notwithstanding the lack of a formal EEOC complaint, so long as she provides the EEOC head office with notice of intent to sue within 180 days of the allegedly discriminatory incident and at least 30 days before commencing suit. 29 U.S.C. §§ 633a(c),(d); *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003). There is no assertion that Easton has failed to meet these requirements.

federal government from retaliating against an employee who participates in protected EEO activity. *Forman v. Small*, 271 F.3d 285, 296 (D.C. Cir. 2001).

Absent direct evidence of discrimination or retaliation, an employee must satisfy the familiar *McDonnell Douglas* burden-shifting framework when bringing a claim of discrimination or retaliation under the ADEA. *Krodel*, 748 F.2d at 705; *Cuddy*, 694 F.2d at 856–57. Under this framework, a plaintiff must first make out a *prima facie* case by demonstrating sufficient facts to create a reasonable inference of age-based discrimination or retaliation. The burden then shifts to the defendant to provide a legitimate nondiscriminatory reason for the adverse employment action. The burden on the defendant is merely one of production, not persuasion. *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288–89 (D.C. Cir. 1998) (en banc). Once the defendant meets this burden, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's asserted legitimate reason is false, a lie, or that the employer's real motivation was discriminatory, such that a fact finder could infer discrimination. *Id.* at 1289–90; *Krodel*, 748 F.2d at 705. The plaintiff "at all times retains the burden of persuasion," *Coburn*, 711 F.2d at 342, and must show that age was a "determinative factor" in the defendant's decision. *Krodel*, 748 F.2d at 706.

  *1. Discrimination Claims*

Reading her complaint broadly, Easton suggests that DOT discriminated against her, based on her age, with regard to three incidents—the failure to reclassify her position in a timely manner, Compl. ¶ 14; the issuance of a letter of reprimand; *id.* ¶ 23; and the lowering of her performance appraisal. *Id.* ¶ 24. DOT argues that Easton failed in her burden of demonstrating a *prima facie* case of age discrimination with regard to these incidents. To establish a *prima facie*

case of age discrimination, Easton is required to show that: (1) she was a member of the ADEA's protected class of persons over forty (40) years of age; (2) she was qualified for her position and was performing her job well enough to meet her employer's legitimate expectations; (3) she suffered an adverse employment action despite her qualifications and performance; and (4) she was disadvantaged in favor of similarly situated younger employees. *See, e.g.*, *Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1077–78 (D.C. Cir. 1999).

With regard to her first claim—that DOT discriminated against her by failing to convert her position to a bargaining unit position in a timely fashion—the evidence makes clear that *all* of the employees in Easton's bargaining unit, regardless of age, were subjected to the same delays. Defs.' Mot., Exs. B & C. Given the lack of evidence to suggest that Easton was disadvantaged in favor of a younger person or that her age was somehow relevant in the decision to delay conversion, there can be no "inference that age . . . was a determining factor in [defendants'] employment decision," *Cuddy*, 694 F.2d at 856–57. Accordingly, Easton has failed to establish a *prima facie* case of age discrimination with regard to the delay in reclassifying her position.

Easton also suggests that the letter of reprimand and the lowered appraisal were motivated by her age. Again, Easton fails to establish a *prima facie* case of age discrimination with regard to these actions. As the D.C. Circuit has made clear, such actions are not intrinsically adverse enough to trigger ADEA protections absent some indication of objective or tangible harm. *Brown v. Brody*, 199 F.3d 446, 458 (D.C. Cir. 1999) (noting the "thick body of precedent" that "refutes the notion that formal criticism or poor performance evaluations are necessarily adverse actions."). Easton's performance evaluation in 2004, while lower in some

regards than in other years, was nonetheless not "adverse in the absolute sense," *id.*, because her overall rating was still "Outstanding"—the highest of the five possible ratings. Pl.'s Opp'n, Ex. 13. Moreover, there is no evidence in the record that hints that Easton was adversely affected by the issuance of the letter of reprimand.

Accordingly, the court grants DOT's motion for summary judgment with regard to Easton's ADEA claims of discrimination.

### 2. Retaliation Claims

Easton also alleges that DOT retaliated against her, in violation of the ADEA, for participating in protected EEO activity and for communicating with Representative Wynn. *See, e.g.*, Compl. ¶ 33. DOT moves for summary judgment on these claims, arguing that Easton has failed to exhaust her administrative remedies. Defs.' Mot. at 11. While this argument has merit with regard to her Title VII retaliations claims, it fails with regard to her claims of retaliation under the ADEA. As discussed *supra* note 3, the ADEA allows a plaintiff to proceed directly to court without filing a formal complaint with the EEOC. *See Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003) (discussing the exhaustion requirements for ADEA claims). Because Easton has exhausted her administrative remedies with regard to her ADEA claims—by providing the EEOC head office with a notice of intent to sue within 180 days of the allegedly discriminatory incidents and at least 30 days before commencing suit, 29 U.S.C. §§ 633a(c),(d)—dismissal of these claims is inappropriate.

### 3. Hostile Work Environment

Finally, Easton alleges that she was subjected to a hostile work environment because of her age, Compl. ¶ 28, and because she engaged in protected EEO activity under the ADEA. *Id.* ¶

9

17.  The D.C. Circuit has yet to recognize that the ADEA provides a cause of action for claims of a hostile work environment.  *See Gibson v. Office of the Architect of the Capitol*, 2002 U.S. Dist. LEXIS 27602, *26 (D.D.C. Nov. 19, 2002).  Even assuming that such a claim may proceed under the ADEA, Easton's hostile work environment claim nonetheless fails.  To make out a *prima facie* claim for a hostile work environment in the ADEA context, other courts of appeals have required a plaintiff to show that (1) she is 40 years old or older; (2) the employee was subjected to harassment, either through words or actions, based on age or because she participated in activities protected by the ADEA; (3) the harassment had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.  *Id.* at *26–27; *see also Crawford v. Medina General Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996).  Easton has failed to meet this burden, for she has failed to establish that she was harassed, that such harassment was based on her age or was retaliatory, or that such harassment interfered with her work performance.  Because there is insufficient evidence to support a jury verdict that Easton suffered harassment based on her age or in reprisal for her protected activities, much less harassment "severe or pervasive enough to create an objectively hostile or abusive work environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), DOT is entitled to summary judgment.

### III.  CONCLUSION

For the aforementioned reasons, it is this 26th day of June, 2006, hereby

**ORDERED** that defendants' motion to dismiss or, in the alternative, for summary judgment is granted in part and denied in part as set forth in this memorandum.


                                            Henry H. Kennedy, Jr.
                                            United States District Judge